UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FOUNTAINHEAD INVESTMENTS, INC., et. al.,      :

           Plaintiffs,      :

       -against-      :

ROBERT DEPALO, et. al.,      :

           Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

06 Civ. 2090 (AJP)

**OPINION AND ORDER**

**ANDREW J. PECK, United States Magistrate Judge:**

       Presently before the Court is a motion by Fountainhead Investment, Inc. for attorneys' fees pursuant to a September 2, 2008 Civil Judgment against defendants Prem Ramchandani, Avi Sivan, and IGIA, Inc. (See Dkt. No. 37: Notice of Motion & Diener Aff.) The Judgment, awarding Fountainhead the amount of $58,581.04 plus costs (Dkt. No. 32: 9/2/08 Judgment ¶ 1),[1] resulted from defendants' default of a June 29, 2007 settlement agreement, made in open court, which provided that in the case of a default, the prevailing party would be granted "reasonable attorneys fees and expenses in connection therewith," and the Court (i.e., Magistrate Judge Peck pursuant to the parties consent under 28 U.S.C. § 636(c)) retained jurisdiction pursuant to the settlement. (Diener Aff. Ex. B: 6/29/07 Conf. Tr. at 13.)

---

[1]  The order also awarded Fountainhead judgment against defendant IGIA for an additional $253,125 plus costs. (9/2/08 Judgment ¶ 2.) The present motion does not address that component of the judgment.

Fountainhead requests legal fees against defendants Ramchandani and Sivan of $27,529.27, the amount Fountainhead claims to have expended seeking satisfaction of the Judgment. (Diener Aff. ¶ 14.)  Defendants Ramchandani and Sivan do not contest Fountainhead's entitlement to reasonable attorneys' fees, but do contest Fountainhead's calculation thereof.  (Dkt. No. 39: Mortner Aff.¶¶ 1-3.)

For the reasons discussed below, Fountainhead's motion (Dkt. No. 37) for attorneys' fees is GRANTED in the amount of $12,431.25.

**FACTS**

On June 29, 2007, Fountainhead entered into a settlement agreement with defendants Ramchandani, Sivan, and IGIA pursuant to which the defendants agreed to pay $50,000 in twenty five consecutive monthly installments of $2,000.  (Dkt. No. 37: Diener Aff. Ex. B: 6/29/07 Conf. Tr. at 5.)[2]  Beginning in July 2007, defendants made four payments, totaling $8,000, before defaulting.  (Diener Aff. ¶ 6.)  On November 28, 2007, Fountainhead sent defendants a notice of default, and when defendants did not cure the default by payment of the amounts then due, Fountainhead accelerated the balance under the terms of the settlement agreement.  (Dkt. No. 31: Rendon Aff. ¶¶ 13-17 & Ex. C: 11/28/07 Rendon Ltr.)[3]  When defendants failed to tender the

---

[2]  Under the terms of the settlement agreement, defendants Ramchandani, Savin, and IGIA were jointly and severally liable for the $50,000. (6/29/07 Conf. Tr. at 5.)  In addition, IGIA agreed to issue Fountainhead a convertible debenture in the amount of $300,000, subject to certain terms and conditions.  (6/29/07 Conf. Tr. at 4-12.)

[3]  The settlement agreement provided that: "In the event that any of those cash payments is not
(continued...)

balance due within the period prescribed by the settlement agreement, Fountainhead moved to enter judgment. (Dkt. No. 30: 8/12/08 Motion.) On September 2, 2008, the Court entered final judgment against defendants Ramchandani, Sivan and IGIA in the amount of $58,581.04, consisting of the remaining balance ($42,000) plus interest for a subtotal of $44,929.50, as well as $13,651.54 of attorneys' fees incurred by Fountainhead in enforcing the settlement agreement. (See Rendon Aff. ¶¶ 17, 30, 31; Dkt. No. 32: 9/2/08 Judgment ¶ 1.)

When defendants had not paid the judgment by May 12, 2009, Fountainhead subpoenaed defendants Ramchandani and Sivan to give deposition testimony regarding all three defendants' assets and to produce certain documents. (Diener Aff. Ex. C: 6/24/09 Sher Ltr. at 2.) The depositions were scheduled for May 27, 2009. (Id.) In hopes of reaching an agreement as to payment of the judgment, the depositions were postponed until June 17, 2009. (6/24/09 Sher Ltr. at 3.) On the eve of that date, Fountainhead agreed to adjourn the depositions to June 19, 2009 provided that defendants paid $1,500 to reimburse Fountainhead for its costs. (Id.) The parties also agreed that if defendants paid $25,000 prior to June 19, 2009, the deposition would be further adjourned to June 24, 2009. (Id.) Defendants tendered both payments and the deposition was rescheduled for June 24, 2009. (Id.) Defendants, however, failed to attend the scheduled depositions on June 24, 2009. (6/24/09 Sher Ltr. at 1.) On June 25, 2009, Sivan paid Fountainhead

---

3/   (...continued)
     timely paid, the Fountainhead Group will send a notice of default, an opportunity to cure to the IG[I]A Group and if they have not cured within five business days then all cash payments are accelerated and due." (6/29/07 Conf. Tr. at 5.)

4

$33,581.04, the remainder of the balance owing.  (Dkt. No. 35: 6/25/09 Mortner Ltr.; Dkt. No. 36: 7/31/09 Sher Ltr.)   On July 2, 2009, Ramchandani was finally deposed in his capacity as an officer of IGIA .  (Dkt. No. 39:  Mortner Aff. ¶ 6.)

**Fountainhead's Attorneys' Fees Motion**

Fountainhead's motion seeks legal fees of $27,529.27 from defendants Ramchandani and Sivan.  (Diener Aff. ¶ 14.)  Specifically, Fountainhead seeks $12,029.27 for the work of its litigation counsel, Arnold & Porter; $5,000 for the work of Robert Diener, Esq., outside general counsel to Fountainhead; and $10,500 for the work of Neal Sher, Esq., special counsel to Fountainhead.  (Diener Aff. ¶ 13.)

Defendants concede that Fountainhead is owed reasonable attorneys' fees but contest Fountainhead's calculation.  (Mortner Aff. ¶ 2.)  Defendants argue that Fountainhead is not entitled to the $12,029.27 attributed to Arnold & Porter because those fees were incurred prior to the September 2, 2008 judgment.  (Mortner Aff. ¶¶ 3-4.)  Defendants also contend that since Ramchandani and Sivan had satisfied their individual liability before the July 2, 2009 Ramchandani deposition, any costs incurred in relation to that deposition cannot fairly be charged against them as opposed to IGIA.  (Mortner Aff. ¶¶ 5-6.)

## ANALYSIS

**I.    THE LEGAL STANDARD FOR DETERMINING ATTORNEYS' FEES**

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a

reasonable hourly rate.'" Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. . . . The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended.' . . . Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. at 433-34, 103 S. Ct. at 1939-40.[4/] Particularly in awarding statutory attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward." Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir. 2008) ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations.").

Last year, however, the Second Circuit acknowledged that the lodestar's "value as a metaphor has deteriorated to the point of unhelpfulness," and abandoned use of the term due to longstanding confusion regarding its proper application, while leaving the methodology essentially

---

[4/] The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees. E.g., N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

the same.[5/]  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190.  The Second Circuit held that:

> [T]he better course – and the one most consistent with attorney's fees jurisprudence – is for the district court, in exercising its considerable discretion, to bear in mind <u>all</u> of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying client would be willing to pay.  In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors;[6/] it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.  The district court should then use that reasonable hourly rate to calculate what can properly be termed the "<u>presumptively reasonable fee</u>."

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190 (emphasis added).[7/]

---

[5/]  The Second Circuit added:  "While we do not purport to require future panels of this court to abandon the term – it is too well entrenched – this panel believes that it is a term whose time has come."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190 n.4.

[6/]  The twelve Johnson factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases.  Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

[7/]  See also, e.g., Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (Arbor
(continued...)

7

"[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." Hensley v. Eckerhart, 461 U.S. at 440, 103 S. Ct. at 1943; accord Farrar v. Hobby, 506 U.S. 103, 114, 113 S. Ct. 566, 574 (1992); Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 2008 WL 3255130 at *15; Kassim v. City of Schenectady, 415 F.3d 246, 253-54 (2d Cir. 2005); Pino v. Locascio, 101 F.3d 235, 237 (2d Cir. 1995).

"There is no precise rule or formula for making these determinations." Hensley v. Eckerhart, 461 U.S. at 436, 103 S. Ct. at 1941. "The district court has broad discretion in" determining if time was reasonably expended and "need not . . . scrutinize[] each action taken or the time spent on it," Aston v. Sec'y of Health & Human Servs., 808 F.2d 9, 11 (2d Cir. 1986), but the Court has a duty to discount any "[e]xorbitant, unfounded, or procedurally defective fee applications" and ensure the final award is reasonable. Comm'r, I.N.S. v. Jean, 496 U.S. 154, 163, 110 S. Ct. 2316, 2321 (1990).

Hensley, Arbor Hill and most of the cases cited above involved awards of statutory attorneys' fees. The inquiry is much simpler in contractual attorneys' fees situations, where there cannot be any enhancement of the fees actually charged the client. Moreover, particularly in determining contractual attorneys' fees, "there is a strong presumption that the lodestar figure [i.e.,

---

7/ (...continued)
Hill relied on the substance of both the "'lodestar' approach" and the "Johnson" approach to "set forth a standard that [the Second Circuit] termed the 'presumptively reasonable fee.'"); Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 151-52 (2d Cir. 2008); Supreme Oil Co. v. Abondolo, 568 F. Supp. 2d 401, 409 (S.D.N.Y. 2008) ("In the Second Circuit, fee awards are determined by the 'presumptively reasonable fee' method.") (citing Arbor Hill); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 536-37 (S.D.N.Y. 2008).

the hourly rate times hours expended] represents the 'reasonable' fee" and the party advocating a reduction in the amount "bears the burden of establishing that an adjustment is necessary to the calculation of a reasonable fee." Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992) (citations & internal quotations omitted), cert. denied, 506 U.S. 1053, 113 S. Ct. 978 (1993).[8/]

## II.    APPLICATION OF THE STANDARD TO FOUNTAINHEAD'S CLAIM

Defendants do not contest Fountainhead's entitlement to attorneys' fees, nor do they contest the attorneys' hourly rates. (See generally Dkt. No. 39: Mortner Aff.)

### A.    Attorneys' Fees Incurred Before Final Judgment

Defendants contend that Fountainhead is not entitled to recover fees for legal services provided by Arnold & Porter prior to the September 2, 2008 final judgment. (Mortner Aff. ¶¶ 3-4.) Defendants argue that because the judgment included an award for reasonable attorneys' fees

---

[8/]    See also, e.g., VFS Financing, Inc. v. Pioneer Aviation, LLC, 08 Civ. 7655, 2009 WL 2447751 at *3 (S.D.N.Y. Aug. 11, 2009) (Peck, M.J.); Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp., 04 Civ. 3854, 2008 WL 4833025 at *2 (S.D.N.Y. Nov. 3, 2008) (Peck, M.J.); DLJ Mortg. Capital, Inc. v. Sunset Direct Lending, LLC, 07 Civ. 1418, 2008 WL 4489786 at *9 (S.D.N.Y. Oct. 6, 2008) ("'strong presumption' that the lodestar figure was the reasonable fee . . ."); Wise v. Kelly, 620 F. Supp. 2d 435, 441 (S.D.N.Y. 2008) (same); Diaz v. Paragon Motors of Woodside, Inc., No. CV-03-6466, 2007 WL 2903920 at *4-5 (E.D.N.Y. Oct. 1, 2007) ("[T]he 'party advocating such a departure [from the lodestar], however, bears the burden of establishing that an adjustment is necessary to the calculation of a reasonable fee.'"); Trs. of Bricklayers & Allied Craftworkers Local 5 v. Helmer-Cronin Constr., Inc., 03 Civ. 0748, 2005 WL 3789085 at *6 (S.D.N.Y. Oct. 24, 2005) ("There is a strong presumption that the lodestar amount represents a reasonable fee. The party seeking an adjustment to the lodestar amount bears the burden of establishing that an adjustment is necessary in order to calculate a reasonable fee.") (citation omitted); Lewis v. Triborough Bridge & Tunnel Auth., 97 Civ. 0607, 2001 WL 1898318 at *3 (S.D.N.Y. Aug. 6, 2001) (same); Colbert v. Furumoto Realty, Inc., 144 F. Supp. 2d 251, 262 (S.D.N.Y. 2001) (same).

incurred through the date of the judgment, Fountainhead has already been compensated for those fees. (Mortner Aff. ¶¶ 3-4.) Defendants contend that Fountainhead only is entitled to attorneys' fees for work performed after September 2, 2008 in connection with satisfying the final judgment. (Mortner Aff. ¶ 3.)

The Court agrees that attorneys' fees incurred prior to the September 2, 2008 judgment should not be assessed against the defendants now. When the Court entered judgment, it specifically included in the judgment $13,651.54 for attorneys' fees – the exact amount Fountainhead requested. (See Dkt. No. 31: Rendon Aff. ¶¶ 17, 30, 31 & Ex. F: Arnold & Porter Billing Records; Dkt. No. 32: 9/2/08 Judgment ¶ 1.) Arnold & Porter's current bills do not reflect new legal work, prior to or after the September 2, 2008 final judgment, but rather amounts billed but unpaid by Fountainhead for work performed from about July 2007 through September 10, 2008. No contemporaneous billing records are submitted to support these amounts (see fn.4 above), nor does it appear that the amounts are referable to post-judgment enforcement.

Accordingly, Fountainhead's request for an award of attorneys' fees in the amount of $12,029.27 for Arnold & Porter's work, is denied.

**B.    Attorneys' Fees Incurred In Connection With The Ramchandani Deposition**

Defendants also argue that Ramchandani and Sivan should not be liable for attorneys' fees incurred by Fountainhead in connection with the July 2, 2009 Ramchandani deposition because the individual defendants had satisfied their individual liability before that date, the purpose of the deposition was to find assets of the corporate defendant IGIA, and thus any work performed by

attorneys Diener and Sher in preparation for the Ramchandani deposition cannot be construed as work done in furtherance of satisfying the judgment against them as individuals. (Dkt. No. 39: Mortner Aff. ¶¶ 5-6.) Accordingly, defendants contend that they should not be charged individually for these costs. (Mortner Aff. ¶ 6.)

The Court finds that only part of the costs of the Ramchandani deposition should be borne by defendants Ramchandani and Savin. While the individual defendants were still in default, Fountainhead served a subpoena for their depositions in aid of execution of judgment. (Dkt. No. 37: Diener Aff. Ex. C: 6/24/09 Sher Ltr. at 2.) Defendants however, failed to attend one scheduled deposition, thus delaying the taking of the deposition until after Ramchandani and Savin had satisfied their individual liability. (6/24/09 Sher Ltr. at 2-3; see page 3 above.) Had Ramchandani and Savin attended the scheduled deposition on June 24, 2009, there is no doubt that they would be responsible for covering the reasonable attorneys' fees associated therewith. Instead, the deposition took place several days later, at a time when its primary purpose had become the execution of judgment against the corporate judgment debtor, IGIA. (Mortner Aff. ¶ 6.) The Court grants Fountainhead reasonable attorneys' fees in connection with the Ramchandani deposition up to the time the individual defendants paid their individual liability. To the extent Fountainhead seeks attorneys' fees for work done in connection with the July 2, 2009 deposition after Ramchandani and Savin had satisfied their judgment liability, Fountainhead's request is denied.

Fountainhead has submitted a request for an award of $5,000 for the work of Robert Diener, Esq. (Diener Aff. ¶ 13.) According to Diener's time records, he spent one hour in

preparation for the July 2, 2009 Ramchandani deposition after the individual judgment debtors had satisfied their liability. (Diener Aff. Ex. D: Diener Billing Records.)[9] Diener's time is billed at a rate of $350 per hour (Diener Billing Records), and Fountainhead's request is reduced accordingly. Therefore, Fountainhead is granted $4,650 for the legal fees of Robert Diener.[10]

Fountainhead has requests $10,500 for the work of Neal M. Sher, Esq. (Diener Aff. ¶ 13.) According to Sher's time records, he spent a total of twenty-eight hours attempting to satisfy the judgment. (Diener Aff. Ex. D: Sher Billing Records.) Of that total, 7.25 hours were spent preparing for and conducting the July 2, 2009 deposition of Ramchandani after the individual defendants had satisfied their liability. (See Sher Billing Records.)[11] Sher's time is billed at a rate of $375 per hour and thus Fountainhead's request is reduced by $2,718.75 ($375 times 7.25 hours). Fountainhead is awarded $7,781.25 for Neal Sher's legal fees.

## CONCLUSION

The Court grants Fountainhead's request for attorneys' fees as follows:

---

[9] The time entry for July 1, 2009 is the only one following the June 25 payment by the individual defendants that is clearly associated with the July 2, 2009 Ramchandani deposition. (See Diener Billing Records.)

[10] Diener's time entries total $6,265 but Fountainhead requested reimbursement of only $5,000. (Compare Diener Aff. ¶ 13 with Diener Aff. Ex. D.) The Court accordingly will deduct the $350 from the $5,000 that was requested.

[11] The time entries for July 1 & 2, 2009 are the only entries following the June 25 tender of the remainder balance owing that are clearly associated with the July 2, 2009 Ramchandani deposition. (See Sher Billing Records.)

12

|  |  |  |
|---|---|---|
| Arnold & Porter |  | $     0 |
| Robert Diener |  | 4,650.00 |
| Neal Sher |  | 7,781.25 |
|  | **TOTAL FEES:** | **$ 12,431.25** |

For the reasons stated above, the Court grants Fountainhead's motion (Dkt. No. 37) for attorneys' fees against defendants Ramchandani and Sivan (jointly and severally) in the amount of $12,431.25. The Clerk of Court shall enter a supplemental judgment accordingly.

SO ORDERED.

DATED:   New York, New York
         October 27, 2009

Andrew J. Peck
United States Magistrate Judge

Copies to:   Robert Diener, Esq.
             Neal M. Sher, Esq.
             Moshe Mortner, Esq.